Thank you. As stated, my name is David Ness and I represent Rosemary McDonald Houston. This case presents a unique set of facts. The victim suffered from an open and obvious medical condition that obviously caused her pain. My client was convicted of providing her with a prescription drug, methadone, which she used unbeknownst to Ms. Houston with other drugs and also used it to take an overdose of the medication. As a result, she died. As the court's aware, Ms. Houston's sentence was bumped up probably 10, 15-fold. She was sentenced to over 20 years in prison. Had she been convicted solely of distribution of the drug, her sentence would have been down in the neighborhood of two to three years. The question... So there wasn't a dispute at trial that your client did in fact supply the victim with methadone? We didn't really contest that. Your defense essentially was a humanitarian compassion and no intent, obviously, to bring harm to the victim. Essentially, yeah. I think that's wrapped up in the proximate cause argument. I could certainly understand from a defense theory why you would pursue that, because these are really a tough set of facts. But in the face of the statutory language, which essentially makes the distributor of a controlled substance liable if death ensues, and with the district court's instruction telling the jury that it had to find proximate causation here, how was your client harmed by the court's instruction, even though it may have been erroneous and not necessary under the statutory language? Well, we're not arguing there was an error in instructing the jury. Well, I assume you liked the instruction. Unfortunately, you disliked the result. Correct. Yeah. I think that's a fair synopsis. Sure. Of course. But I'm not sure, Mr. Ness, what your argument is. Is it a sufficiency of the evidence challenge? Is that what you're saying, that no rational finder of fact could have found the elements of the offense on this record? It is, except I think it's rather unique, because what we're looking at is we're looking at the foreseeability issue and the proximate cause issue. Now, certainly in the civil sense, and I think even in the criminal sense, there are times when the court, as a matter of law, can and, in fact, should determine that, hey, this result is so attenuated from what the defendant did that, as a matter of law, we make a policy decision that this defendant should not be held liable for the ultimate result. But hasn't Congress made that decision? Congress enacted a statute which essentially says if you're a drug dealer and you provide a controlled substance to a purchaser and death ensues, and the jury here found that it was from an ingestion of too much methadone, you are liable for the death. Isn't that the policy? And you're asking us to rule as a matter of law, I guess, in contravention to what Congress has said, that that's not fair on these facts. Well, I guess two things. The court cases that have said that, the Robinson case, the Patterson case, even those cases recognized that there can be, in certain instances, a superseding intervening event, if you will, that would cut off the chain of causation. Now, they determined that under the facts of those cases, there was no evidence that there was any superseding. And your argument here would be that in essence, a suicide by the victim, if that's what it was, rather than a drug-induced, you know, overdose, is the intervening cause. Right. The suicide or, at the very least, the gross, gross negligence of the victim. How is this different from the heroin addict who injects more than a, the proper dosage of heroin and succumbs because the system simply crashes? I look at the ---- The heroin was more pure than what the addict expected. I think when you're looking at the cases that involve clearly illicit drugs, the situation is different in that, one, the supplier of that drug knows that, in fact, the user is going to use it for an illicit purpose. I don't think that there was ---- Methadone is used as a substitute for heroin addiction, right? And also for pain. Okay. All right. And, two, the illicit drugs, heroin, methamphetamine, those sorts of things, there's also, I think, a greater known risk, at least it should be known by the supplier, because of purity problems, the way they're ultimately used. I mean, in this case, the evidence, and I don't think that there's any evidence to the contrary, is that Ms. Houston provided these drugs for this woman because her teeth were rotting out of her head and she suffered from serious pain. And that was all of the witness testimony, and that was the reason why she provided the drugs. Wasn't there some evidence in the record that your client had sold other drugs besides methadone to the victim? No. There was other evidence in the record that the victim had obtained drugs from others. From others. Okay. Not from your client. Not from my client. No. The only drugs the government could prove were methadone. It was the methadone. And your client obtained the methadone from the Indian Health Service, presumably because the doctor had prescribed it to Ms. Houston? To Ms. Houston, yes. Was there evidence that the mother of Ms. Bradford had told your client that there was some danger of Bradford misusing drugs? Both the mother and I think that Ms. Bradford's sister testified that they came and spoke to my client about supplying her drugs, yes. And how does that bear on, assuming that there is a proximate cause requirement as was instructed here, how does that bear on it? Well, I would say a couple of things. First, I think you need to look at those conversations also in light of other things that the mother and the victim's husband testified to. And that is that neither one of them had any idea that this woman had a drug problem. So while there certainly was evidence that they came and talked to Ms. Houston and asked her not to supply Ms. Bradford with any more drugs, there was nothing in the record that would tend to support the conclusion that Ms. Houston knew that Ms. Bradford was actually using these drugs illicitly or taking overdoses of the drugs. Well, Counsel, she had to know it was illicit if it weren't prescribed for Ms. Bradford. I'm sorry, Your Honor. Wouldn't your client have to know that the use was illicit if those drugs were not prescribed for the deceased? Any use of a prescription drug by someone for whom the drug is not prescribed is illegal. I concede that, yes. And she sold them for $2 a pill. Was that it? That was the evidence that she sold. And was there testimony that that is sort of the street price for prescription drugs that are misdirected in the manner that Judge Rawlinson did? I don't think there was any testimony as to what the street price of the pills were. You have about two minutes left. Did you want to save time for rebuttal argument? Yes, Your Honor. Thank you. Ms. Suk. Good morning, Your Honor. My name is Lori Suk. I'm an assistant U.S. attorney in Great Falls, Montana. I was not trial counsel in this case, but I'm here today arguing on behalf of the United States. Ms. Suk, I have a question for you relating to the way this case comes to us procedurally. Because a proximate cause instruction was given, what's the government's position as to whether we need to assess if proximate cause is a requirement of the statute? Your Honor, the government's position is that you do not need to assess that. Every case that the government found regarding interpretation of this statute and whether there was a proximate cause or foreseeability requirement held the other way. In this case, though, because of, I believe, United States v. Maine, I have personal connection to U.S. v. Maine. That was my case back in 1997. And that law of criminal proximate cause, the district court in this case, for lack of a better phrase, did it one better. Was cautionary because of the existence of U.S. v. Maine and instructed, gave the jury instruction that it didn't have to give. So that's the state of the record before you want to appeal. And that is what we have responded to because the district court gave that instruction. So really you are in a position of even more so in this case. Okay. Let me ask you a question. You do not have to reverse. Okay. A question also as to how this statute would normally work in the government's view. Let's assume a student at University of Montana has marijuana and and sells a marijuana cigarette, whatever that's termed these days, to some other student. Sells a single cigarette and the other student has an allergic reaction to it and dies. Some sort of rare allergy problem that's personal to the victim. Would the student who made the sale be, could they be convicted and sent to jail for 20 years? Yes, Your Honor. Under the language of this statute and under the holdings of the other circuits who have looked at this statute, yes. If you, of course, interject criminal proximate cause, the question that would have to be answered, as was answered by this jury, is whether there was some other superseding intervening cause. And if the jury in Montana, under your set of facts, was instructed as this jury was, they would be making that additional finding. But the statutory language does not require it. Ms. Suk, you used the term criminal proximate cause, which sounds to me like you're suggesting there's a difference between traditional proximate cause under that wonderful case we all studied in law school. Allcraft versus the Long Island Railroad. Is there a difference? Aren't we talking about the same creature of the law here? We are. It is a, I guess because of my connection to Maine, it is a reference that I have made personally that this was the case. And in my career, certainly, that I've dealt with that has now taken proximate cause into the criminal arena. But no. Proximate cause, the definition given by the panel in Maine is virtually indistinguishable from our Fallscraft definition. All right. I just wanted to make sure. I don't need to make a legal distinction. Okay. I just wanted to make sure I hadn't missed some subtle difference in the law that perhaps Judge Noonan appreciated in Maine and I missed it. No. No, not at all, Your Honor. In this case, just to summarize, what we have before us is the jury having been given three elements, one really unnecessary, but three elements to decide. And, in fact, the case was postured so that they were also given the lesser included instruction, which did not include the third element. So the focus of the trial and the focus of this appeal, which I think is important, has always been, it was for the jury, it is now in this argument whether there was proximate cause established. As I've said, even though the government does not think the statute requires it, that's what was done here. And whatever way the court chooses to review it, there was sufficient evidence in the record to meet all of the elements. If there are no other questions from the panel, I will end there. I don't think there are. Thanks, Ms. Suk. Thank you. Judge Tallman, you just asked the question of whether or not there's a subtle difference between proximate cause in the civil and criminal arenas. And I would direct the Court's attention to it's actually a footnote in this Court's decision in the Spiney case. Spiney? Spiney, yes, sir. It's 795F2nd 1410. And in the footnote, the Court said, We reject the government's argument that the restatement of torts provides a useful guideline for resolving the proximate cause issue in this case. Proximate cause analysis in crimes differs from tort analysis causation. The most obvious difference in this regard between the two areas of law, of course, is that in tort law the defendant may be held responsible for harms different than those actually risked by his conduct. While this is generally not the same in criminal law. So there is, I think, somewhat of a subtle difference. So where do we, I guess, how do we draw the line? I can understand why we wouldn't want to import the entire restatement of torts, but I'm not sure that that footnote goes as far as you want it to go in suggesting that proximate cause is somehow different here than it is under the Paul's graph analysis. I think the way I interpret the footnote is that when looking at proximate cause in the criminal context, it's somewhat more narrowly construed in the criminal context. But does that have to do with the differences in the burden of proof? Because certainly under tort law, the tortfeasor can be held responsible on much thinner evidence by a preponderance of the evidence than we permit in criminal cases. But is the proximate cause analysis any different? In criminal law, we certainly recognize intervening causes. We recognize doctrines of transferred intent. When the bullet goes astray and hits a bystander instead of the intended victim, all of which I think are part and parcel of a traditional proximate cause analysis. I think the way I would look at it is more sort of a rule of leniency, if you will, or somewhat more fairness to the defendant, that it's not going to be quite as open-ended in its analysis as it is in tort law. In other words, you're going to restrict the foreseeability analysis a little more than you would in tort law so that the actual result is, for lack of better words, more foreseeable than it necessarily would be in the tort situation. Okay. Thank you. Did you have another point you wanted to make? I guess there was just two other points I was going to make. With respect to the interpretation of the if-death results language in the statute, I think if the Court looks at the earlier civil right, they're mostly decided under assault statutes or the civil rights criminal statutes. In all of those cases which predate the Patterson line of cases, they analyze that language and they – and the Court specifically held that there is a proximate cause component in analyzing the if-death results language. And the other thing, just one last point I think I would make, is if you look at the Fooker and Fanfan, as well as the Blakeley decision, and I think that their analysis with respect to strict liability is a little different now. Now we're looking at these almost as separate crimes rather than a mere sentencing sort of issue. And so where does that get you? I mean, you've got a jury determination on a specific instruction that says you have to find proximate cause, and by virtue of the verdict of guilty, they found it. So I'm not sure I understand your last point at all. Well, I think my last point is that to the extent that the government is arguing that this is basically a strict liability statute, it didn't even have to be presented to the jury, so therefore the Court need go no further. What I'm pointing out is that I don't – I don't necessarily think that the Robinson and Patterson decisions in light of Fooker can any longer be interpreted that way. And so I would urge the courts to not at least accept the government's position that this is no more than a strict liability statute. So you want us to decide whether or not there is a proximate cause requirement under this particular statute? Yes. Okay. Thank you. Nothing further. Okay. Thanks, Mr. Ness. Ms. Suk, we can only see you when you stand up with this camera angle. Yes. I understand. Yeah, we let the pellet go a little longer, but if you feel you're done, then we're done. I feel that I'm done, Your Honor. Okay. Well, look, we appreciate counsel's argument. We enjoy having distinguished Montana counsel, and this case shall be submitted. Thank you. Thank you very much. Thank you.
judges: Gould, Tallman, Rawlinson